**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**Union de Tronquistas de Puerto Rico, Local 901**

    Plaintiff,

    v.

**Mendez & Company, Inc.,**

    Defendant.

CIVIL NO. 14-1903 (PG)

**OPINION AND ORDER**

Pending before the court is defendant Mendez & Company's ("Defendant" or "Mendez") unopposed motion for summary judgment. Docket No. 9. For the reasons set forth below, the court **GRANTS** the motion for summary judgment and **DISMISSES** the case **WITH PREJUDICE.**

**I. BACKGROUND[1]**

Mendez and Teamsters Local 901 ("Union de Tronquistas de Puerto Rico," in Spanish) (herein, the "Union") are parties to a collective bargaining agreement ("CBA") that governs the labor-management relations between them. The CBA sets forth a mandatory grievance procedure through which all disputes related to the interpretation, application and administration of the agreement are to be resolved. See Docket No. 17-1 ("Exhibit I," Cert. Translation of CBA).

Isaac Fernandez ("Fernandez" or the "grievant") worked for Mendez as a Forklift Operator from 2006 until July of 2011, when he was terminated from his employment after incurring in several violations to the CBA and Mendez's workplace rules. The court summarizes the facts relevant below.

*The Employment Manual*

As part of his employment with Mendez, Fernandez received a copy of Mendez's Employee Manual (the "Manual") on November 3, 2006. By acknowledging its receipt,

---

[1] As noted above, the Union did not file an opposition to Mendez's motion for summary judgment. See Perez-Cordero v. Wal-Mart P.R., 440 F.3d 531, 534 (1st Cir. 2006) ("In most cases, a party's failure to oppose summary judgment is fatal to its case."). Having closely scrutinized Defendant's moving papers, the court finds that Defendant has met its burden under Fed.R.Civ.P. 56(a). See Rivera-Torres v. Rey-Hernandez, 502 F.3d 7, 13 (1st Cir. 2007) (citing Velez v. Awning Windows, Inc., 375 F.3d 35, 41 (1st Cir. 2004)) (noting that "even an unopposed motion for summary judgment should not be granted unless the record discloses that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). The court will thus cull the relevant facts from Defendant's statement of uncontested material facts ("SUMF"), which are in turn based on, and supported by the pertinent arbitration materials. See Docket No. 9-5.

he agreed that any violation of Mendez's policies, rules or procedures would constitute just cause for disciplinary action against him, including termination. The Manual prohibits the use of cellular phones during working hours. See Docket No. 17-4 ("Exhibit V," Cert. Translation of Employee Manual) at pp. 3-4. It also includes various norms pertaining to the proper use of company equipment, as well as the obligations of employees with respect to the notification and investigation of workplace accidents. Id. at pp. 4-8. Finally, the Manual sanctions disciplinary action against an employee who incurs in insubordination, the definition of which includes the failure to perform the employee's corresponding duties or the duties assigned by his or her supervisors. Id. at pp. 6-7.

### *Relevant Workplace Incidents*

On August 23, 2010, Fernandez received a written disciplinary action after flouting his supervisor's instructions on three occasions, in violation of the Manual's insubordination rule.[2] See Docket No. 17-4 at page 7 (Rule 31, ¶ 11); see also Docket No. 17-3 ("Exhibit IV," Cert. Translation of Written Disciplinary Action).

On June 27, 2011, Fernandez was involved in a workplace accident.[3] The internal investigation that ensued revealed that Fernandez was using his cell phone while operating the company forklift around the warehouse's basement, where he went to stow two pallets of beer. As he was driving out of the basement, Fernandez collided with another forklift operator. Upon the impact, several cases of beer fell on the ground and broke, thus resulting in economic losses for Mendez.

As part of the investigation conducted thereafter, Fernandez was asked to submit a written statement setting forth his version of the facts. On July 1, 2011, Fernandez submitted his statement, indicating that he "was not present

---

[2] The Arbitration Award specifies that on August 11, 2010, Fernandez was loading a company truck when his supervisor, Jorge Arzuaga, instructed him to stop that task and take fifteen boxes of merchandise to one Mendez's promoters. When Fernandez refused to do so, Arzuaga repeated the instruction for a second time to no avail. After Arzuaga repeated the instruction for a third time, Fernandez complied under protest. See Docket No. 9-5 ("Exhibit III," Cert. Translation of Arbitration Award) at page 5.

[3] The incident was captured on Mendez's video surveillance cameras and the security footage for that day, perforce, was eventually examined by Mendez's management. It was also presented at the arbitration hearing. See Docket No. 9-5; see also Docket No. 17-5 ("Exhibit VI," Cert. Translation of Transcript of Arbitration Hearing).

when [his] co-worker … dropped the beer[,]" and that the merchandise was already on the ground when he arrived at the area. See Docket No. 9-5 at page 6; Docket No. 17-7 ("Exhibit X," Cert. Translation of Fernandez's Statement). However, upon viewing the security footage, Fernandez's supervisors and Mendez's Director of Human Resources confirmed that Fernandez was in fact using his cell phone while driving the forklift into the basement and that he crashed into another forklift on his way back.

Based on the investigation, Mendez determined that Fernandez violated several provisions of the CBA and the Manual, including Mendez's safety standards. Mendez also concluded that in submitting false information, Fernandez contravened his obligation to "[f]ully cooperate with any investigation carried out by the [c]ompany[,]" and "to give true and complete information to the [c]ompany," be it verbally or in writing. See Docket No. 17-4 at pp. 4-8. Consequently, on July 12, 2011, Fernandez was terminated from his employment. See Docket No. 17-2 ("Exhibit II," Cert. Translation of Termination Letter).

### *Arbitration*

Pursuant to the CBA's mandatory grievance procedure, the Union filed two grievances before the Bureau of Conciliation and Arbitration of the Puerto Rico Department of Labor and Human Resources, challenging Fernandez's written disciplinary action and termination from employment, respectively.[4] See Docket No. 9-5 at page 1. The arbitration hearing was held on January 31, 2014, with Arbitrator Ruth Couto Marreo presiding. See Docket No. 17-5. On June 6, 2014, the matter was deemed submitted for adjudication after the parties presented their respective post-hearing briefs. Id.

The Arbitrator rendered the Arbitration Award (the "Award") on November 16, 2014, upholding the two employment decisions challenged by the Union. See Docket No. 9-5. She found that the August 23, 2010 written warning was warranted given that Fernandez incurred in insubordination when he refused to carry out his supervisor's instructions, which disrupted and delayed Mendez's operations for that day. See id. at page 8. The Arbitrator also held that Fernandez's termination was justified, as the evidence demonstrated that he violated Mendez's safety standards, and in particular, Policy VII and Rules 11 and 16 of the

---

[4] The two cases (A-10-3078 and A-12-412) were consolidated and scheduled for final and binding arbitration, in accordance with Article X of the CBA. See Docket Nos. 9-5 and 17-1.

Manual by making unauthorized use of his cellphone while operating the forklift. Id. at pp. 9-10. Finally, the Arbitrator found that Fernandez's written statement was contradicted by the evidence on record (e.g., the security footage), thus demonstrating the grievant violated Rules 17 and 18 of the Manual. Id.

### *Petition to Vacate*

On December 5, 2014, the Union filed a Petition for Review of Arbitration Award in the Puerto Rico Court of First Instance, San Juan Part, but Mendez soon removed it to this court under 28 U.S.C. § 1441(b) and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). See Docket No. 1. Succinctly, the Union argues that the Award in question should be set aside because it is **(1)** based on the Arbitrator's faulty evaluation of the evidence and **(2)** not "in accordance with the law." See Docket No. 9-9. In its motion for summary judgment, Mendez asserts that under the applicable scope of review, the Union has failed to establish a valid ground upon which this court may vacate the Award.[5] See Docket No. 9 at page 2.

## II. DISCUSSION

### A. Scope of Review

"It is a firm principle of federal labor law that where parties agree to submit a dispute to binding arbitration, absent unusual circumstances, they are bound by the outcome of said proceedings." Asociacion de Empleados del Estado Libre Asociado de Puerto Rico v. Union Internacional de Trabajadores de la Industria de Automoviles, Aeroespacio e Implementos Agricolas, U.A.W. Local 1850, 559 F.3d 44, 47 (1st Cir. 2009) (quoting Posadas de Puerto Rico Assocs., Inc. v. Asociacion de Empleados de Casino de Puerto Rico, 821 F.2d 60, 61 (1st Cir. 1987)). A federal court's review of an arbitrator's decision is "extremely narrow and exceedingly deferential." Airline Pilots Ass'n, Int'l v. Pan Am. Airways Corp., 405 F.3d 25, 30 (1st Cir. 2005) (quoting Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000)). "Indeed, it is 'among the narrowest known in the law.'" Ramos-Santiago v. United Parcel Service, 524 F.3d 120, 123 (1st Cir. 2008) (citing Maine Cent. R.R. Co. v. Bhd. of Maint. of Way Employees, 873 F.2d 425, 428 (1st Cir. 1989)).

---

[5] As Mendez points out, the Union failed to present any arguments concerning the Arbitrator's conclusions as to the written warning received by Fernandez, thus waiving the same. See Glob. NAPs, Inc. v. Verizon New England, Inc., 706 F.3d 8, 16 (1st Cir. 2013) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

"[W]hen the arbitration concerns the interpretation of a collective bargaining agreement, a court should uphold the view of the arbitrator so long as 'it can find, within the four corners of the agreement, any plausible basis for that interpretation.'" Wheelabrator Envirotech Operating Servs. Inc. v. Massachusetts Laborers Dist. Council Local 1144, 88 F.3d 40, 44 (1st Cir. 1996) (citing El Dorado Technical Servs. v. Union Gen. De Trabajadores de Puerto Rico, 961 F.2d 317, 319 (1st Cir. 1992)). "That a reviewing court is convinced that the arbitrators committed error –even serious error- does not justify setting aside the arbitral decision...This remains true whether the arbitrators' apparent error concerns a matter of law or a matter of fact." Cytyc Corp. v. DEKA Products Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006) (citations omitted).

"Nevertheless, there are limits to that deference." Eastern Seaboard Const. Co., Inc. v. Gray Const., Inc., 553 F.3d 1, 3 (1st Cir. 2008) (citing Kashner Davidson Sec. Corp. v. Mscisz, 531 F.3d 68, 70 (1st Cir. 2008)). In order to overturn the award, the movant must show "that the award was (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." UMass Mem'l Med. Ctr., Inc. v. United Food And Commercial Workers Union, 527 F.3d 1, 4 (1st Cir. 2008) (citations and quotation marks omitted).

**B. Analysis**

Here, the record shows that during the arbitration hearing held on January 31, 2014, the Arbitrator heard the testimony of seven witnesses, including Mendez's Director of Human Resources, as well as several managers, supervisors and directors who supervised the grievant and/or participated –directly or indirectly- in the employment decisions challenged by the Union. See Docket No. 17-5. As part of the evidence proffered by Mendez, the Arbitrator received the security video and various photographs depicting the June 27, 2011 forklift accident in which Fernandez was involved. She also heard the testimony of several witnesses in regards to that evidence. Finally, the court notes that Fernandez himself testified at the hearing and **admitted that he had in fact used his cellphone during working hours on the day of the incident, in violation of Mendez's safety rules**. See id. at page 66.

In her Award, the Arbitrator acknowledged the parties' diverging positions concerning Fernandez's dismissal. For the sake of clarity, the court summarizes

them here. On the one hand, Mendez argued that Fernandez's dismissal was warranted because he disregarded the company's safety standards and employment rules by making unauthorized use of his cellphone and submitting false information during the investigation of the accident. The Union, on the other hand, argued that the dismissal was not justified, as Fernandez was neither involved in nor caused the accident. It also asserted that Fernandez's written statement contained the correct version of the facts. Nonetheless, the Arbitrator ultimately adopted Mendez's position and concluded that the evidence presented by Mendez was sufficient to prove Fernandez's violations, and thus, the just cause for his dismissal under Puerto Rico law.[6] See Docket No. 9-5 at pp. 8-10.

The Union now complains that the Arbitrator erred in her decision insofar as the evidence presented by Mendez did not demonstrate that Fernandez provoked the forklift accident, which (in its view) was the reason for his termination. Docket No. 9-9. However, whether or not Fernandez caused the accident is inapposite because neither Mendez nor the Arbitrator concluded so. See Docket No. 9-5 at page 10. In any case, "[i]t is well settled that it is the arbitrator who determines 'the truth' respecting material matters in controversy as he believes it to be." Union De Tronquistas De Puerto Rico, Local 901 v. United Parcel Serv., Inc., No. 16-1098 (PG), 2016 WL 4194242, at *2 (D.P.R. Aug. 8, 2016) (quoting Union De Tronquistas De Puerto Rico, Local 901 v. United Parcel Service, Inc., Civil Case 15-1364 (PAD) (citing Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901, 763 F.2d 34, 39 (1st Cir. 1985)). Simply put, it is the arbitrator's task "to determine the weight, relevancy and credibility of the evidence." Union De Tronquistas De Puerto Rico, Local 901 v. United Parcel Serv., Inc., 149 F.Supp.3d 246, 250–51 (D.P.R. 2016). Thus, this court will not disrupt the Award merely because the Union believes that the Arbitrator "erred in her evaluation of the evidence…."[7] See Docket No. 9-9 at page 4.

---

[6] The CBA mandates that the arbitration award be issued "in accordance with the law." Docket No. 17-1 at page 10 (or Art. X, § 6 of the CBA). In this case, that "law" is Puerto Rico's Wrongful Discharge Statute, P.R. Laws Ann. Tit. 29 § 185a et seq. ("Law 80"). For brevity's sake, the court refers to, and adopts by reference the Arbitrator's analysis of the facts and issues submitted for her consideration against the provisions of Law 80. See Docket No. 9-5 at pp. 8-10.

[7] The court notes that the Union has failed to present or develop any challenge to the Arbitrator's conclusion that Fernandez violated Rules 17 and 18 of the Manual by submitting false information to Mendez during the investigation of the incident. Any argument concerning this matter is therefore waived. See Glob. NAPs, Inc., 706 F.3d at 16 (citing Zannino, 895 F.2d at 17).

The Union also claims that the Arbitrator committed error in her legal conclusions, mainly, in determining that Fernandez's termination was justified under Puerto Rico law. Id. But as Mendez points out in its motion for summary judgment, the Union did not elaborate or explain the basis for its contention. And as the adage goes, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Glob. NAPs, Inc., 706 F.3d at 16 (citing Zannino, 895 F.2d at 17). The same conclusion holds true with respect to the Union's claim that the Arbitrator's decision affected Fernandez's due process rights. See Docket No. 9-9 at page 6. The Union's arguments on both matters are vague and fail to place the court in a position to adjudge the purported issues. The court will thus close the door on these seriously nebulous claims.

### III. CONCLUSION

After careful review of the Arbitration Award, the court finds that the Arbitrator considered the language of the CBA and the Employment Manual against the framework of Puerto Rico law and determined that Fernandez's dismissal was justified. See Docket No. 9-5. Her interpretation, no doubt, falls within the four corners of the CBA. See Wheelabrator Envirotech Operating Servs. Inc., 88 F.3d at 44. In sum, the Union has failed to show the existence of any ground upon which this court may overturn the Arbitrator's decision. See e.g. UMass Mem'l Med. Ctr., Inc., 527 F.3d at 4. Defendant, on the other hand, has met its burden under Fed.R.Civ.P. 56. Consequently, the court **GRANTS** Defendant's motion for summary judgment (Docket No. 9), **DENIES** Plaintiff's petition to vacate, and **DISMISSES** the case **WITH PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, July 12, 2017.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**